

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 3, 2019

**BY ECF AND E-MAIL**
The Honorable Paul A. Engelmayer
United States District Judge
Southern District of New York
United States Courthouse
40 Foley Square
New York, New York 10007

Re: **United States v. Joseph Prezioso**
19 Cr. 157 (PAE)

Dear Judge Engelmayer:

The Government respectfully submits this letter in connection with the sentencing of defendant Joseph Prezioso, currently scheduled for June 10, 2019. As more fully set forth below, the plea agreement between the parties (the "Plea Agreement") calculated a United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") range of 0 to 6 months' imprisonment (the "Guidelines Range"). The Government respectfully submits that a sentence of incarceration within the Guidelines Range that both reflects the seriousness of the offense and deters Prezioso and others, is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## Offense Conduct

### I. The Investigation into the Bonanno Crime Family

In or about 2016, this Office, along with the Department of Homeland Security, Homeland Security Investigations, the Department of Labor, and the Federal Bureau of Investigation, began investigating members and associates of the Bonanno Organized Crime Family of La Cosa Nostra. (Presentence Report ("PSR") ¶ 7). As a result of that investigation (the "Bonanno Investigation"), a grand jury in this district returned an indictment in January 2018, which charged ten members and associates of La Cosa Nostra with racketeering and extortion offenses. (PSR ¶ 7; *see United States v. Cammarano*, 18 Cr. 15 (AKH)). One of the defendants named in the *Cammarano* indictment was Joseph Sabella, a captain in the Bonanno Family. (PSR ¶ 7). The Bonanno Investigation continued throughout 2018, resulting in two superseding indictments in *Cammarano*.

### II. The Tank Site

During the course of the Bonanno Investigation, federal authorities discovered a large scale construction and trucking fraud at a jobsite located on Staten Island (the "Tank Site"). (PSR ¶ 8).

The Tank Site housed two large, liquid natural gas tanks that were scheduled to be demolished. (PSR ¶ 8). Prezioso was hired by the owner of the tank site in 2013 to oversee the project, which contemplated importing clean dirt and concrete onto the site for a fee, and then demolishing the tanks. (PSR ¶ 8). Prezioso was paid $5,000/month by the Tank Site owner for his work on the site. The Bonanno Investigation revealed, among other things, that (1) Joseph Sabella was intimately involved at the Tank Site and controlled the Bonanno Family's interest at the Tank Site, (2) Prezioso attended meetings with Sabella and other members and associates of La Cosa Nostra about who would have access to dump material at the Tank Site, (3) Prezioso communicated by e-mail with Sabella about the site, and (4) Prezioso was secretly paid over $146,000 in cash from a Genovese Family-backed company that did work at the Tank Site. (PSR ¶¶ 11-12).

III. Prezioso Lies to Federal Agents and Withholds Documents from a Grand Jury Subpoena Response

On April 20, 2018, Prezioso was interviewed by this Office and federal agents as part of the Bonanno Investigation. (PSR ¶ 9). During the interview, Prezioso lied about his compensation for work at the Tank Site and Sabella's activities at the site. (PSR ¶ 10). In addition, Prezioso withheld e-mails between himself and Sabella when responding to a grand jury subpoena issued as part of the Bonanno Investigation. (PSR ¶ 12). These lies and the withholding of documents were designed to hide the extent of Prezioso's and Sabella's involvement in the unlawful activity at the Tank Site. (PSR ¶ 10).

**The Defendant's Guilty Plea and the PSR**

On March 5, 2019, the defendant pleaded guilty, pursuant to the Plea Agreement, to making false statements, in violation of Title 18, United States Code, Sections 1001(a)(1), (2). Pursuant to the Plea Agreement, the parties stipulated to a base offense level of 6. (PSR ¶ 3). After a two-level reduction for acceptance of responsibility, the total offense level is 4. (PSR ¶ 3). The parties further stipulated that the defendant has no criminal history points and was in Criminal History Category I. (PSR ¶ 3). Accordingly, the parties stipulated that the Guideline Range was 0 to 6 months' imprisonment. (PSR ¶ 3). In the PSR, Probation has reached the same determination. (PSR ¶¶ 17-29, 72).

**Discussion**

Section 3553(a) provides that the sentencing "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection," and then sets forth seven specific considerations:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established [in the Guidelines];

(5) any pertinent policy statement [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

*Application*

In light of the circumstances of the instant offense, the Government submits that the appropriate sentence is an incarceratory sentence within the Guidelines Range that is long enough to reflect the seriousness of Prezioso's conduct and deter Prezioso and others from obstructing federal investigations.

Prezioso's conduct was unquestionably serious. He lied to federal agents and withheld documents from a federal grand jury who were investigating significant organized crime activity at the Tank Site. As a result, Prezioso effectively hid from authorities his receipt of almost $150,000 in secret cash payments from a mob-backed company that he received without knowledge of his employer. Moreover, Prezioso hid the involvement of Joseph Sabella, a high-ranking member of the Bonanno Family who Prezioso knew had been indicted in the *Cammarano* case and was still under investigation by federal authorities.[1] Prezioso's conduct threatened the integrity of the Government's investigation and would have effectively kept critical evidence in the *Cammarano* case from law enforcement had agents not been able to develop independent evidence to prove the falsity of Prezioso's statements. An incarceratory sentence should therefore reflect the seriousness of this offense.

An incarceratory sentence should also be of sufficient length to deter Prezioso and others from engaging in this type of conduct. Notably, some of the letters submitted on Prezioso's behalf characterize him as a role model and someone always willing to help others. And yet, here, Prezioso agreed to meet with the Government under the guise of helping their investigation in a proffer setting, only to lie repeatedly to cover up his and others' wrongdoing. Prezioso put his own interest before that of the community, actively obstructing the investigation of criminal activity. The sentence sought

[1] Sabella pled guilty to racketeering conspiracy just shy of three weeks after Prezioso was arrested. During his plea allocution, Sabella admitted to his involvement in the Tank Site fraud. He awaits sentencing, and his stipulated Guidelines range is 87 to 108 months' imprisonment.

by the Government would cause Prezioso to think twice before doing so again, and would send a message generally that obstructing federal investigations will not result in a slap on the wrist.

**Conclusion**

For the foregoing reasons, the Government respectfully requests that the Court impose a sentence of imprisonment within the Guidelines Range that reflects the seriousness of the offense and affords adequate deterrence.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: /s/ Jason M. Swergold
Jason M. Swergold
Assistant United States Attorney
Southern District of New York
(212) 637-1023

cc: Jeffrey Lichtman, Esq.
Jeffrey Einhorn, Esq.